**Don S. DAVIS, M.D., Plaintiff,**

v.

**UNITED HEALTHCARE INSURANCE COMPANY, Defendant.**

**No. Civ.A. 498CV64LN.**

United States District Court,
S.D. Mississippi,
Eastern Division.

Dec. 18, 1998.

---

Joseph A. Davis, Witherspoon & Compton, Meridian, MS, for plaintiff.

Cynthia P. Wilson, Clifford K. Bailey, III, Wise, Carter, Child & Caraway, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

SAM S. LEE, Chief Judge.

This cause is before the court on the motion of plaintiff Don S. Davis, M.D., to remand this case to the Circuit Court of Lauderdale County, Mississippi, from which it was removed by defendant United Healthcare Insurance Company (UHIC). UHIC has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that plaintiff's motion is well taken and should be granted.

The facts relevant to this motion are undisputed and are as follows. At some time prior to 1994, Avery Dennison established and maintained a self-funded employee welfare benefit plan for its employees and their eligible dependents. UHIC administered the plan on behalf of Avery Dennison pursuant to an Administrative Services Agreement. Additionally, Avery Dennison and UHIC entered into a Purchaser Services Agreement and a separate Managed Care Agreement, under which UHIC was authorized to and did establish a managed care plan. Under this managed care "system" or "structure," to use UHIC's terminology, UHIC contracted with various health care providers—"in-network providers"—who agreed to provide medical services to Avery Dennison's plan participants at fees established by UHIC. Dr. Davis, the plaintiff herein, was such an "in-network provider" by virtue of successive provider agreements which he executed with UHIC and its predecessors.

In September 1994, Stayce Coleman sought treatment from Dr. Davis. As an employee of Avery Dennison, Stayce Coleman was a participant in Avery Dennison's medical benefits plan, at least, that is, until September 4, 1996, when her coverage terminated. Two days later, on September 6, 1996, prior to performing certain medical procedures on Coleman, including surgery, Dr. Davis's office sought confirmation of insurance coverage and pre-authorization for treatment from UHIC. In response to his inquiry, UHIC informed Dr. Davis (erroneously, as it turned out), both verbally and in writing, that Coleman was insured under the Avery Dennison plan. UHIC thus pre-authorized the proposed medical treatment. Dr. Davis submits that he provided such treatment to Coleman based solely on UHIC's assurance of coverage and its "promises" to pay for the authorized procedures. Subsequently, however, when he submitted his bill to UHIC for payment, UHIC denied payment on the ground that Coleman was not covered by the insurance plan administered by UHIC, her coverage having been terminated on September 4, 1996.

Dr. Davis filed the present lawsuit in state court, alleging claims of negligent and/or intentional misrepresentation and breach of contract and seeking to recover actual and punitive damages based on UHIC's having wrongly represented that Coleman had insurance coverage when, in fact, she did not.

UHIC timely removed the case, asserting the existence of federal question jurisdiction under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.,* *see* 28 U.S.C. § 1331 (federal question jurisdiction statute). Noting in its notice of removal that Dr. Davis has alleged in his state court complaint that Stayce Coleman has assigned to him any claim she may have against UHIC, UHIC submits that Dr. Davis's complaint represents an attempt to recover benefits under an employee welfare benefit plan governed by ERISA, and thus, his putative state law claims are preempted.[1] Apparently taking his cue from the magistrate judge, plaintiff has moved to remand the case to state court.[2]

The court notes at the outset of this discussion that both parties agree that the health insurance plan offered by Avery Dennison to its employees, including Coleman, was an ERISA plan. They also agree that Coleman, while at one time a participant in that plan, was no longer covered by the plan on the date that Dr. Davis's office sought verification of insurance coverage. They additionally agree that, apparently due to a lag in Avery Dennison's advising UHIC of the termination of her coverage, UHIC incorrectly advised Dr. Davis's office that Coleman had coverage under the plan for the procedures which Dr. Davis proposed to perform.

■ The court further observes as an initial matter that although Dr. Davis did allude in his complaint to Coleman's assignment of rights, Dr. Davis has explained that he has not asserted claims against UHIC derivatively, in his capacity as Coleman's assignee, but rather has sued strictly on his own behalf, not to recover policy benefits, but to recover damages sustained as a consequence of UHIC's erroneous representation that Coleman had insurance coverage for the procedures plaintiff proposed to perform. As he plainly recognizes, any claim which Dr. Davis might have attempted to assert as Coleman's assignee would be preempted by ERISA, for the law is clear, indeed, that "ERISA preempts the state claims of a provider suing as an assignee of a beneficiary's rights to benefits under an ERISA plan." *The Meadows v. Employers Health Ins.,* 47 F.3d 1006, 1008 (9th Cir.1995); *see also Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir.1990) ("Such derivative claims invoke the relationship among the standard ERISA entities and clearly relate to a plan for preemption purposes."); *McCall v. Metropolitan Life Ins. Co.,* 956 F.Supp. 1172, 1186 (D.N.J.1996) ("assigned claims are obviously 'derivative' and therefore preempted"). Since there are no such claims, however,[3] the proper inquiry in this case is whether ERISA preempts Dr. Davis's nonderivative claims for damages based on UHIC's alleged misrepresentation of coverage. In the court's opinion, it does not.

In *Memorial Hospital System v. Northbrook Life Insurance Co.,* 904 F.2d 236 (5th Cir.1990), a case very much like this one and a case which the court considers to govern the outcome of this motion, the Fifth Circuit held that state law claims by health care providers against plan insurers or administrators for misrepresentation as to the existence of coverage are not preempted by ERISA. In *Memorial Hospital,* a covered dependent under a health insurance policy issued by Northbrook Life Insurance Company sought care at Memorial Hospital. In response to Memorial's inquiry, Northbrook confirmed that she was covered, resulting in Memorial's admitting her for treatment.

---

1. ERISA contains a preemption provision, which states that ERISA preempts "any and all State laws insofar as they now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This provision has been held to unequivocally preempt any claim aimed at the recovery of benefits under an ERISA plan.

2. In an opinion denying UHIC's motion to strike jury demand, Magistrate Judge Alfred Nichols opined that, contrary to UHIC's contention, Dr. Davis's claims are not preempted by ERISA. In that same opinion, the magistrate judge suggested that a motion to remand the case or to dismiss for lack of subject matter jurisdiction would be in order. Soon thereafter, plaintiff filed the present motion.

3. It is true that Dr. Davis referenced Coleman's assignment in the complaint. Moreover, he made further references to UHIC's breach of duties to its "insured." However, it appears that damages were ultimately sought only for the alleged incorrect representation to Dr. Davis that Coleman was covered.

Following her two-month stay at a cost of over $100,000, Memorial submitted its bill for payment to Northbrook, which informed Memorial that the patient was not eligible for coverage after all and denied the claim.

The Fifth Circuit concluded, as had the district court, that ERISA did not preempt Memorial's claim for negligent misrepresentation, which Memorial asserted as a third-party health care provider, independent of its status as its patient's assignee.[4] *Id.* at 250. In reaching this conclusion, the court initially observed that ERISA preemption has generally been found in actions which share two characteristics: "(1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Id.* at 245. The court held that neither of these characteristics is present when a health care provider brings an independent cause of action based on its position as a health care provider, as distinguished from the situation presented when a provider brings a claim to recover plan benefits as an assignee of a plan beneficiary.

More recently, in *Cypress Fairbanks Medical Center v. Pan–American Life Insurance Co.*, 110 F.3d 280, 282 (5th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 167, 139 L.Ed.2d 110 (1997), the Fifth Circuit summarized the justifications given in *Memorial Hospital* for its conclusion that the nonderivative claims of third-party health care providers are not preempted by ERISA:

First, we recognized the "commercial realities" facing third-party providers of health care services, noting that in situations in which it is not clear whether a patient is covered by a health insurance plan, "the provider wants to know if payment reasonably can be expected. Thus, one of the first steps in accepting a patient for treatment is to determine a financial source for the cost of care to be provided." 904 F.2d at 246.

Second, when an insurance company erroneously informs a health care provider such as Memorial that a patient is covered by health insurance, state law, which "allocat[es] ... risks between commercial entities that conduct business in a state," normally provides a remedy. *Id.* at 247–47. This is so, we reasoned, because "[a] provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage." *Id.* at 246.

Third, depriving an independent third-party provider of a state-law cause of action in no way furthers, but rather defeats, Congress's purpose behind enacting ERISA. We recognized in *Memorial* that third-party providers would be less likely to accept the risk of nonpayment, and as a result, may require patients to make upfront payments or subject those patients to other unnecessary inconveniences before treatment is offered. *Id.* at 247. Nor, we reasoned, could Congress have wanted to "shield welfare plan beneficiaries from the consequences of their acts toward non-ERISA health care providers when a cause of action ... would not relate to the terms or conditions of a welfare plan, nor affect—or affect only tangentially—the ongoing administration of the plan." *Id.* at 250.

*Cypress Fairbanks*, 110 F.3d at 282.[5]

As had happened in the *Memorial Hospital* case, in the *Cypress Fairbanks* case, prior

---

**4.** The lower court had concluded that Memorial's claim for breach of contract asserted as its patient's assignee was preempted by ERISA and should therefore be dismissed, while the claims for negligent misrepresentation and estoppel based on Memorial's independent position as a third-party health care provider (as contrasted with those asserted in its derivative status as an assignee of benefits under an ERISA plan), were not preempted by ERISA and were therefore remanded. *Memorial Hosp.*, 904 F.2d at 243. The Fifth Circuit affirmed both of those rulings,

but, finding that the district court had mischaracterized Memorial's claim for violation of article 21.21 of the Texas Insurance Code as a derivative claim for benefits, reversed that aspect of the lower court's decision and directed that the statutory claim be remanded to state court. *Id.* at 244, 250.

**5.** By far, the majority of courts which have considered this issue have agreed with the Fifth Circuit's reasoning and conclusion in *Memorial Hospital* and have found that the preemptive

to admitting a patient, Cypress Hospital received confirmation that the patient was covered by his employer's health insurance plan and extended services to the patient in reliance on those representations. When Cypress thereafter submitted its $178,215 bill for payment, the insurer refused payment on the ground that the patient's insurance coverage was "rescinded as of [the] effective date." *Id.* at 281. Cypress sued in state court, complaining that the employer and insurer had negligently misrepresented the patient's insurance coverage and were liable for deceptive and unfair trade practices. *Id.* at 282. Defendants removed the case, then moved to dismiss or, alternatively, for summary judgment on the ground that ERISA preempted Cypress's claim and that Cypress had no basis for recovery under ERISA. The district court granted the motion, but the Fifth Circuit reversed, concluding that under the court's prior decision in *Memorial,* ERISA preemption did not reach Cypress's claim. In its opinion, the court noted that there had evidently been some confusion among the district courts following *Memorial* as to

> whether our holding in *Memorial* applied to all third-party providers of medical services ... or whether *Memorial* invited courts to conduct a fact-sensitive inquiry into whether the third-party provider, under the unique circumstances of each case,

could properly be characterized as an independent, third-party provider or as an assignee asserting a derivative claim for ERISA benefits.

*id.* at 284. The court held, though, that in cases such as this, where a health care provider has sued for misrepresentation because the insurer or administrator is alleged to have confirmed coverage in error,

> [T]he proper inquiry is whether the beneficiary under the ERISA plan was covered at all by the terms of the health care policy, because if the beneficiary was not, the provider of health services acts as an independent, third-party subject to our holding in *Memorial.*

*Id.*

Since Dr. Davis has submitted, and UHIC agrees, that coverage in this case was denied because Coleman was not covered by Avery Dennison's health care plan, then under the Fifth Circuit's holdings in *Memorial Hospital* and *Cypress Fairbanks,* it would seem evident that Dr. Davis's claims do not "relate to" ERISA, but rather arise under state law; and that is the position maintained by Dr. Davis. UHIC submits, though, that Dr. Davis's reliance on those two cases is misplaced as there exists a critical distinction between this case and the *Memorial Hospital* and *Cypress Fairbanks* cases, namely,

reach of ERISA does not extend to the nonderivative claims of third-party health care providers based on an ERISA insurer's erroneous confirmation of coverage. *See In Home Health v. Prudential Ins. Co. of America,* 101 F.3d 600, 606 (8th Cir.1996) (joining majority of circuits in holding that ERISA does not preempt state tort claims by third-party provider who sues administrator of an ERISA plan, suing not as an assignee of an ERISA beneficiary but as an independent entity claiming damages on account of administrator's misrepresentation of coverage); *The Meadows v. Employers HealthInsurance,* 47 F.3d 1006, 1009 (9th Cir.1995) (finding that "independent state law claims of ... third-party provider, [lay] outside the bounds of the ERISA 'relates to'" standard because "neither [the provider] nor the [putative insureds] had any existing ties to the ERISA plan" at the time of the defendant administrator's alleged misrepresentation); *Hospice of Metro Denver v. Group Health Ins.,* 944 F.2d 752 (10th Cir.1991) (holding that "[a]n action brought by a health care provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan partici-

pant against the insurer seeking recovery of benefits due under the terms of the plan," and unlike the latter, is not preempted by ERISA); *Lordmann Enters., Inc. v. Equicor, Inc.,* 32 F.3d 1529 (11th Cir.1994), *cert. denied,* 516 U.S. 930, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995) (concluding that "state law claims brought by health care providers against plan insurers too tenuously affect ERISA plans to be preempted by the Act."); *McCall v. Metropolitan Life Ins. Co.,* 956 F.Supp. 1172, 1186 (D.N.J.1996) (concluding that provider's negligent misrepresentation claim against plan administrator and insurer was "sufficiently removed" from the insured's efforts to obtain benefits from the plan "to avoid the scope of ERISA preemption" since the claim was "a tort action ... brought in the [provider's] own name, [was] independent of the Plan, and could have been brought even if the Plan did not exist"). *But see Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir.1991) (holding that ERISA preempted health care provider's negligent misrepresentation claim against employee benefit plan).

that Dr. Davis is not an "independent" provider of medical care but is instead a "participating" provider in UHIC's "network" of providers by virtue of provider agreements executed between him and UHIC's predecessors. The court is not persuaded that this distinction renders inapplicable the "proper inquiry" as identified in *Memorial Hospital* and *Cypress Fairbanks.*

A similar argument to that advanced by UHIC was rejected by the court in *Jefferson Parish Hospital Service Dist. No. 2 v. Principal Health Care of La.,* 934 F.Supp. 206, 208 (E.D.La.1996). There, in making the argument that the plaintiff hospital's misrepresentation claim was preempted, the defendant insurer placed "great significance" on the fact that the hospital and the plan had a contractual relationship, having entered into a health maintenance organization agreement. *Id.* at 209. That court, like this one, was unpersuaded that this affected the preemption analysis, characterizing the existence of such a contractual relationship as "a distinction without a difference," *id.,* and observing, "The terms of the HMO agreement may be at issue in the state law claim but this does not mean … that the matter concerns the right to receive benefits under the terms of an ERISA plan," *id.* Likewise, in the case *sub judice,* the fact that Dr. Davis had a contractual relationship with UHIC and that his contract with UHIC addressed the subject of his providing medical care and treatment to participants in Avery Dennison's ERISA plan, while perhaps relevant to the merit of his state law claims, does not place his claims within the ambit of ERISA preemption.[6]

The fact is, the nonderivative misrepresentation claims of Dr. Davis in the case at bar do not address an area of exclusive federal concern, in that by asserting his claims, Dr. Davis is not undertaking to establish any right to recover benefits under an ERISA plan. Moreover, Dr. Davis did not become an ERISA "entity" merely because he agreed to become a part of the UHIC "network" of providers and agreed to accept payment according to a prescribed schedule for patients covered by the Avery Dennison ERISA plan.[7] That is to say, while it may be true that Dr. Davis has a contractual relationship with an entity which is among the "traditional" ERISA entities, he is not himself a "traditional" ERISA entity, and in the court's opinion, is instead properly characterized as an "independent" health care provider asserting claims which are clearly "independent" of the subject ERISA plan. Accordingly, the court concludes that his claims for recovery against UHIC are not preempted by ERISA and that this case must consequently be remanded to state court.

Therefore, it is ordered that plaintiff's motion to remand is granted.

---

6. UHIC has argued that Dr. Davis knew that UHIC's confirmation of coverage and pre-authorization for medical services did not constitute a guarantee that benefits would be paid since, as a "network" provider, he was intimately familiar with the terms and provisions of his provider agreements and other agreements comprising the Avery Dennison "health benefit system" (not to mention the additional fact that a verbal disclaimer was communicated to his office by UHIC contemporaneously with UHIC's confirmation of coverage). This argument might be relevant to the resolution of his state law claims and bear on issues arising with respect to his state law claims (as perhaps, for example, on the reasonableness of any claimed reliance), but is not relevant to the preemption analysis.

7. UHIC argues that Dr. Davis is foreclosed from suing on any cause of action against UHIC since neither Coleman nor Dr. Davis filed any grievance concerning the denial of benefits, as mandated by the terms of the Avery Dennison ERISA Plan. Though in the court's opinion, this argument has no direct bearing on the proper resolution of the present motion, the court would nevertheless observe that the argument is meritless in any event. It is manifest that, his provider agreement with UHIC notwithstanding, Dr. Davis is not a party to the Avery Dennison ERISA Plan and thus is not bound to follow any grievance procedure established therein. Only the participant or beneficiary challenging a denial of benefits may/must do so.